

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORHTERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ELGIN SWANIGAN, Jr and DENISE SWANIGAN,  )  07CV3315
               Plaintiffs  )  **JUDGE FILIP**
    v.  )  **MAG. JUDGE KEYS**
ARGENT MORTGAGE COMPANY, ACC  )
CAPITAL HOLDINGS CORPORATION,  )
MIDWEST HOME FUNDING, LLC and DOES 1 –  )
5,  )  **JURY DEMAND**
               Defendants.  )

## CLAIM FOR DAMAGES AND RESCISSION PURSUANT TO THE TRUTH IN LENDING ACT

Now Comes ELGIN SWANIGAN, Jr and DENISE SWANIGAN, by and through their attorney, Lloyd Brooks, to file this Complaint against ARGENT MORTGAGE COMPANY, ACC CAPITAL HOLDINGS CORPORATION, and MIDWEST HOME FUNDING, LLC as follows:

### Nature of the Action

1. Plaintiffs bring this action against a subprime mortgage lender and its affiliate for rescission and damages pursuant to the federal Truth In Lending Act for the lender's failure to clearly and conspicuously disclose the borrowers' right to cancel in connection with a mortgage loan transaction. Additionally, Plaintiffs seek damages from the lender and a mortgage broker for payment and receipt of a kickback in connection with the mortgage loan transaction.

### Parties

2. Plaintiffs ELGIN SWANIGAN, Jr and DENISE SWANIGAN reside in a single family home which they own at 1823 N. Lotus, Chicago, Illinois 60639.

3. Defendant Argent Mortgage Company ("Argent") is a Delaware corporation with its principal offices located in Orange, California and maintains offices in and does business in



JUN 1 3 2007
JUN 1 3 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Illinois. Argent is engaged in the business of originating "subprime" mortgages. Argent makes more than 26 loans per year.

4. Defendant ACC Capital Holdings Corporation, ("ACC") is an affiliate of Argent and transacts business in Illinois. ACC purports to have an interest in loans originated by Argent.

5. Midwest Home Funding, LLC ("Midwest Home Funding") is an Illinois limited liability company with its principal offices located in Lombard, Illinois. Midwest Home Funding is in the business of procuring and arranging for mortgage loans on behalf of its customers.

## Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States.

7. This Court has jurisdiction over the defendants who are all doing business in this State and has availed themselves of this State's benefits and protections.

8. Venue is proper in this Court as defendants reside within this judicial district.

## Argent and Midwest Home Funding's
## Fraudulent and Deceptive Business Operations and Arrangements

9. Argent operations are made profitable through the receipt of fees and interest payments on loans that it originates as well as the selling of its loans on the secondary mortgage market.

10. When selling loans on the secondary market, Argent is able to command a higher selling price for loans with higher stated interest rates and other terms that are lender friendly.

11. Argent originates its loans by associating with mortgage brokers. Argent provides mortgage brokers with "rate sheets" or similar documents that provide the mortgage broker with

information regarding Argent's loan programs including the interest rates it would charge qualified borrowers called "par rates".

12. The "par rate" is the interest rate that a lender would be willing charge to lend to an individual based upon that individual's creditworthiness.

13. In an effort to increase its profits through higher interest payments from its borrowers and higher selling prices for the loans it sells, Argent encourages mortgage brokers to arrange for loans to borrowers with higher than "par rate" interest rates. In other words, interest rates that are higher than the interest rate the borrower is qualified to borrow money at.

14. Argent encourages the mortgage brokers to arrange for these higher than "par rate" loans by offering the mortgage broker a portion of the increased interest rate called a "yield spread premium." The higher the increased interest rate the higher the yield spread premium paid to the mortgage broker.

15. Midwest Home Funding is a mortgage broker. As a mortgage broker, Midwest Home Funding arranges for loans for its customers by contacting direct lenders, such as Argent, to originate loans to Midwest Home Funding's customers.

16. Midwest Home Funding makes a profit by charging fees directly to its customers such as loan application fees, underwriting fees, loan origination fees, etc.

17. Midwest Home Funding also enters into agreements with the direct lenders, including Argent, whereby Midwest Home Funding accepts yield spread premiums on each loan made and other bonuses such as volume based compensation, which are paid based upon the volume of loans arranged by Midwest Home Funding to the lender during a period of time.

18. Aware that no reasonable borrower would agree to pay a higher interest rate, without any benefit in return, Midwest Home Funding does not reveal to its customers that they

are paying higher than "par rate" interest rates. Midwest Home Funding does not reveal to its customers that they qualify for lower interest rates. Midwest Home Funding does not reveal that they are being paid a yield spread premium or why they are being paid a yield spread premium.

19. Argent is aware that its mortgage brokers, including Midwest Home Funding, do not reveal the nature or purpose of the yield spread premium that the mortgage broker is receiving and that mortgage brokers, including Midwest Home Funding, induce borrowers to enter into loan agreements with Argent by using fraud and deceit, including misrepresentations and concealment of material facts regarding the existence, nature, and purpose of the yield spread premium and the increased interest rate the borrower is paying.

### Facts Specifically Related to The Swanigans's Transaction

20. On or about November 4, 2003 the refinanced their mortgage on their principal residence located at 1823 N. Lotus, Chicago, Illinois.

21. In connection with their request to refinance their mortgage, the Swanigans were contacted by Midwest Home Funding to procure a mortgage loan on their behalf.

22. Midwest Home Funding procured a mortgage loan for $261,250 at an adjustable interest rate beginning at 7.150%.

23. Midwest Home Funding received total compensation of at least $5,635.00, including a loan origination fee in the amount of $2,512.50 and a yield spread premium in the amount of $2,512.50 in connection with the loan.

24. Unbeknownst to the Swanigans, Argent and Midwest Home Funding had previously entered into the above described scheme whereby Midwest Home Funding would refer increased interest rate loan business to Argent in exchange for Argent providing Midwest Home Funding with a yield spread premium for such referrals.

25. Midwest Home Funding in fact referred the loan application for the Swanigans to Argent and Midwest Home Funding received a yield spread premium of $2,512.50 from Argent in addition to the $3,123.00 in other loan fees that Midwest Home Funding received in connection with the subject transaction.

26. As described above, the payment of the yield spread premium is a kickback from Argent to Midwest Home Funding for the referral of business and also for the agreement to increase the interest rate on the borrower above that which the borrower might otherwise qualify for.

27. Midwest Home Funding and Argent did not disclose to Plaintiff that they qualified for an interest rate lower than the one he was charged for the subject loan.

28. Midwest Home Funding and Argent did not disclose to the Swanigans that Midwest Home Funding was going to receive additional compensation outside of closing by having Plaintiff's agree to pay a higher than necessary interest rate for the loan.

29. Midwest Home Funding and Argent did not disclose to the Swanigans that they had entered into a scheme involving the exchange of loan referrals for the payment of yield spread premiums.

30. The amount of total compensation paid to Midwest Home Funding did not reasonably relate to the value of the services provided by Midwest Home Funding and is in excess of what a reasonable mortgage broker should be paid in a similar transaction.

## Count I – Breach of Fiduciary Duty

31. The Swanigans reallege paragraphs 1 to 30 as though they were fully realleged herein.

32. Midwest Home Funding acted in a position of trust with respect to the Swanigans in the subject transaction.

33. Midwest Home Funding was in a position of trust as to the Swanigans in acting as their agent for the purpose of procuring financing for the purchase of the subject property. In acting as the Swanigans's agent Midwest Home Funding owed the Swanigans a duty of loyalty to act in the Swanigans's best interest and not to engage in self dealing.

34. Midwest Home Funding received a yield spread premium in connection with arranging for the Swanigans's loan.

35. By definition, a yield spread premium is a outside payment from the lender paid to a mortgage broker for the arranging of a loan whereby the interest rate paid by the borrower is in excess of the interest rate that the borrower would otherwise qualify for.

36. The payment of a yield spread premium is a kickback from the lender to the broker for the referral of business and also for the agreement to increase the interest rate on the borrower above that which the borrower might otherwise qualify for.

37. Midwest Home Funding did not disclose to the Swanigans that he qualified for an interest rate lower than the one he was charged for the subject loan.

38. Midwest Home Funding did not disclose to the Swanigans that they were going to receive additional compensation outside of closing by having the Swanigans agree to pay a higher than necessary interest rate for his loan.

39. Midwest Home Funding did not disclose to the Swanigans that it had entered into a referral scheme with Argent in exchange for the yield spread premium payment.

40. Midwest Home Funding's failures to disclose the nature of yield spread premiums, that the Swanigans qualified for a lower interest rate, and that Midwest Home

Funding would receive additional compensation outside of closing for arranging for the higher interest rate loan, are self dealing in nature and amount to a breach of its fiduciary duty to the Swanigans.

41. Midwest Home Funding's breach of fiduciary duty has caused the Swanigans substantial damages including the higher interest payments on the subject loan than would otherwise be necessary and the payment of exorbitant and unlawful fees to Midwest Home Funding.

WHEREFORE ELGIN SWANIGAN, JR. and DENISE SWANIGAN pray upon this Court to enter a judgment in their favor and against defendant MIDWEST HOME FUNDING LLC and award their actual damages in an amount to be proven at trial, their attorney's fees, costs to bring this action, and other further relief as the Court deems equitable and proper.

## Count II – Inducement to Breach Fiduciary Duty

42. Plaintiff realleges paragraphs 1 to 30 and 32 to 41 as though they have fully been realleged herein.

43. Argent offered Midwest Home Funding a yield spread premium payment in exchange for referring the Swanigans's loan application to them and for the increased interest rate charged to the Swanigans above the rate at which the Swanigans would otherwise qualify.

44. Argent knew that Midwest Home Funding, as a mortgage broker, had entered into a fiduciary relationship with the Swanigans.

45. Argent obtained substantial benefit from their scheme with Midwest Home Funding including the interest payments to be paid by the Swanigans, loan fees charged to the Swanigans at the closing, profit from the sale of the Swanigans's loan to a secondary lender, and other compensation.

46. Due to Argent's scheme with Midwest Home Funding and inducement by Argent to Midwest Home Funding to breach its fiduciary duties, the Swanigans suffered substantial damages including the higher interest payments on the subject loan than would otherwise be necessary and the payment of exorbitant and unlawful fees to Midwest Home Funding.

WHEREFORE ELGIN SWANIGAN, JR. and DENISE SWANIGAN pray upon this Court to enter a judgment in their favor and against defendant ARGENT MORTGAGE COMPANY and award their actual damages in an amount to be proven at trial, their attorney's fees, costs to bring this action, and other further relief as the Court deems equitable and proper.

## Count III – TILA Rescission

47. On November 4, 2003 the Swanigans closed a loan in the amount of $261,250 with Argent secured by a mortgage lien against their home.

48. In connection with the closing of the loan the Swanigans were provided an incomplete Notice of Right to Cancel, See Exhibit A, attached to this pleading.

49. Plaintiff needed and used the loans for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

50. Regulation Z reads in pertinent part:

§226.23

**(a) *Consumer's right to rescind.***

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or

upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

**(b)** *Notice of right to rescind*:

(1) In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

**(d)** *Effects of rescission.*

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

51. TILA provides in pertinent part:

12 U.S.C. §1640

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000;

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this

title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

52. Because this transaction was secured by Plaintiffs' home and was not entered into for purposes of its initial purchase or construction, the loan was made subject to Plaintiffs' rescission rights pursuant to the Truth In Lending Act, 12 U.S.C. §1635, and implementing Federal Reserve Board Regulation Z, 12 C.F.R. Part 226.

53. The incomplete notice of right to cancel provided to the Swanigans failed to properly inform them of their right to cancel the transaction, specifically the incomplete notice failed to inform the Swanigans of the date her right to cancel would expire.

54. ACC and Argent currently claim to have an interest in the subject Note and Mortgage or a right to collect payments from the Swanigans on the subject loan.

55. The Swanigans have exercised their right to rescind the loan. See Exhibit B.

56. More than 20 days has passed since the cancellation of the Swanigans' loan. As of the filing of this action the defendants have failed to properly respond to the cancellation of the subject loan.

WHEREFORE ELGIN SWANIGAN, Jr and DENISE SWANIGAN respectfully request that the Court enter judgment in their favor and against defendants for a judgment, capable of recordation in public records, voiding the subject mortgage; statutory damages for the underlying failure to provide Plaintiffs with the proper disclosure or right to cancel the transaction; statutory damages for the defendants' failure to properly respond to the request for rescission; an order requiring deletion of all adverse credit information relating to the loan; an award of Plaintiffs' attorney's fees and costs of this action; and, such other relief as this Court deems just and appropriate.

Respectfully Submitted,

*Lloyd Brooks*

State Bar No. 6271994
Lloyd J. Brooks
The Brooks Law Firm
15008 Woodlawn Ave.
Dolton, Illinois 60419
(708) 841-8000 Telephone
(708) 841-8080 Facsimile
E-mail: lloyd.brooks@thebrooksfirm.com
***Attorney for Elgin Swanigan, Jr. and Denise Swanigan***

## Jury Demand

Plaintiffs demand trial by jury.

*Lloyd Brooks*

## NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: November 4, 2003
LOAN NO.: 0053389656 - 9701
TYPE: ADJUSTABLE RATE

BORROWER(S): ELGIN SWANIGAN, Jr.    DENISE SWANIGAN

ADDRESS: 1823 N LOTUS AVE
CITY/STATE/ZIP: CHICAGO, IL 60639

PROPERTY: 1823 N LOTUS AVE
CHICAGO, IL 60639

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is [ENTER DOCUMENT SIGNING DATE]; or
2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN: FUNDING
PHONE: (800)-561-4207
FAX: (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of [ENTER FINAL DATE TO CANCEL]

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE _____ DATE _____

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____ 11/4/03    _____ 11-4-03
BORROWER/OWNER ELGIN SWANIGAN, Jr.  Date    BORROWER/OWNER DENISE SWANIGAN  Date

_____    _____
BORROWER/OWNER                Date    BORROWER/OWNER                Date

1064-NRC (Rev 6/99)        **BORROWER COPY**        11/04/2003 9:37:28 AM

# THE BROOKS LAW FIRM

15008 Woodlawn Avenue
Floor One
Dolton, Illinois 60419

**Lloyd J. Brooks, CPCU**
Attorney at Law

(708) 841-8000 Telephone
(708) 841-8080 Facsimile
lloyd.brooks@thebrooksfirm.com
www.thebrooksfirm.com

April 3, 2007

**VIA CERTIFIED MAIL**
U.S.P.S. Article No. 7006 2150 0002 1451 2826
Argent Mortgage Company, LLC
Attn: Funding
3 Park Plaza
Irvine, California 92614

**VIA CERTIFIED MAIL**
U.S.P.S. Article No. 7006 2150 0002 1451 3083
Argent Mortgage Company, LLC
1100 Town and Country Road, Suite 200
Orange, California 92868

Re: Notice of Rescission and Lien
Elgin Swanigan, Jr. and Denise Swanigan, 1823 North Lotus, Chicago Illinois
Argent Mortgage Company, LLC Loan Number 0053389656-9701

To The Interested Parties Addressed Above:

Please be advised that this office has been retained by the above client to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

You are further notified that my clients elect to cancel the loan of November 4, 2003 for failure to comply with the Truth in Lending Act and its implementing regulations, Regulation Z. Pursuant to 15 U.S.C. §1641, demand is made for the identity of the owner of this note and mortgage. Pursuant to 12 U.S.C. §2605, I request an account history, so that I may determine what, if anything, my clients are obligated to repay.

Faithfully yours,

THE BROOKS LAW FIRM

Lloyd J. Brooks

CC: Client

# THE BROOKS LAW FIRM

Notice of Rescission and Lien
Elgin Swanigan, Jr. and Denise Swanigan, 1823 North Lotus, Chicago Illinois
April 3, 2007
Page 2

I, Lloyd Brooks, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addresses for each entity addressed above via U.S. mails as indicated above each addressee on April 3, 2007.

_____
Lloyd Brooks